UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES M. G.,

        **Plaintiff,**

  v.                                    Civil Action 2:25-cv-300
                                          Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendants.**

## OPINION AND ORDER

Plaintiff, James M. G., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 8). For the reasons that follow, the Court **OVERRULES** the Commissioner of Social Security's non-disability determination and **REMANDS** this matter pursuant to Sentence 4 § 405(g).

### I.    BACKGROUND

Plaintiff protectively filed his SSI application on July 19, 2022, alleging that he became disabled beginning on September 10, 2016. After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on January 10, 2024, at which Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On March 4, 2024, the ALJ issued an unfavorable

determination, which became final on January 22, 2025, when the Appeals Council declined review. (R. at 18–29, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. He correctly contends that the ALJ erred when evaluating prior administrative findings from state agency reviewers. (Pl.'s Statement of Errors 3–8, ECF No. 9; Pl.'s Reply 1–5, ECF No. 11.)

## II. THE ALJ's DECISION

The ALJ issued the unfavorable determination on March 4, 2024. (R. at 29.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 19, 2022, his alleged disability onset date. (*Id.* at 20.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: bipolar disorder, opioid dependence, attention deficit hyperactivity disorder, personality disorder, post-

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

traumatic stress disorder, carpal tunnel syndrome, and cubital tunnel syndrome on the left side. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 21.)

> The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can frequently handle, finger, and feel; and frequently reach in all directions with the left arm. He can understand, remember, and carry out simple instructions. He can have only occasional changes in the work setting. He can have occasional, superficial interaction with others, with no hourly quota work.

(*Id*. at 23.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 27.) Relying on the VE's testimony, at step five, the ALJ determined that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of laundry laborer, laundry worker, and groundskeeper. (*Id*.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 28–29.)

### III.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

3

(cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ erred when evaluating prior administrative findings from state agency reviewers. Specifically, Plaintiff contends that the ALJ erred when evaluating social interaction findings from Drs. Stacy Koutras and Irma Johnston. The Court agrees.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*.

Here, Dr. Koutras reviewed Plaintiff's file initially and found, in relevant part, that Plaintiff was "capable of brief, superficial interactions with co-workers and supervisors and would be limited to brief, superficial interactions with the public." (R. at 81.) Dr. Johnston reviewed Plaintiff's file upon reconsideration and made the same findings. (*Id*. at 89.)

The ALJ summarized the findings from Drs. Koutras and Johnston as follows:

> [Drs. Koutras and Johnston] opined the claimant has a mild limitation in understanding, remembering, or applying information. He has a moderate limitation in interacting with others, concentrating, persisting, or maintaining pace

---

[3] Because Plaintiff's applications were filed in 2022, they are subject to regulations governing applications filed after March 27, 2017.

> and adapting or managing oneself (Exhibit B3A). The claimant has the ability to maintain concentration, persistence, and pace for tasks learned in one to three months on the job. The claimant is capable of brief, superficial interactions with coworkers and supervisors and would be limited to brief, superficial interactions with the public. He is capable of adapting to a structured and predictable work setting with infrequent changes in their responsibilities and expectations (Exhibits B3A).

(*Id*. at 26.) The ALJ also determined that these finding were persuasive, writing as follows:

> The undersigned finds the State agency consultant opinions of Dr. Stacy Koutrakos and Dr. Irma Johnston are persuasive . . . . Such opinions are supported by their own notation of the objective medical evidence. For instance, they noted that the claimant had normal mental examinations in the record and others showed poor insight and judgment. This objective medical evidence supports the above opinions. They are also consistent with treatment (mental health care and drug treatment from Hopewell Health Centers) and objective medical evidence elsewhere in the record. For example, on examination, when he was incarcerated, the claimant was alert and oriented to person, place, and time. He had rapid speech (usual for this inmate), was cooperative, adequately groomed, and mildly anxious (Exhibit B2F). This objective medical evidence is consistent with the above opinions. Based on the above information, the undersigned finds these opinions are persuasive.

(*Id*.)

As this discussion demonstrates, the ALJ determined that these findings, including that Plaintiff was limited to brief and superficial interactions, were supported by and consistent with the record evidence. Yet the ALJ did not incorporate into Plaintiff's RFC the reviewers' brief interaction limit. Nor did she explain its omission. Instead, the ALJ included in Plaintiff's RFC a limit for occasional, superficial interactions without explaining why she perhaps substituted an occasional interaction limit for a brief interaction limit.

To the extent the ALJ intended such a substitution, the Court does not find that the occasional interaction limit accounts for the reviewers' brief interaction limit. Although the term "brief" is not defined in the Dictionary of Occupational Titles ("DOT") or the Selected Characteristics of Occupations ("SCO"), it is generally understood by its common meaning—

6

short in duration. *See Obrien v. Colvin*, No. 1:15-cv-536, 2016 WL 2755459, at *6–7 (M.D.N.C. May 11, 2016) (finding that terms like "contact," "brief," and "superficial" are sufficiently precise based on everyday usage). This Court has also recognized that "brief" refers to the *length* of an interaction, not its *frequency. Elaine K. v. O'Malley*, No. 2:23-cv-1825, 2024 WL 4023217, at *4 (S.D. Ohio Sept. 3, 2024) (quoting *Oxford English Dictionary* (Dec. 2023) (defining "brief" as "quickly passing away or ending")). In contrast, the term "occasional" refers to how often interactions occur. *Charlee N. A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3085, 2023 WL 312791, at *4 (S.D. Ohio Jan. 19, 2023), *report and recommendation adopted*, 2023 WL 1766096 (S.D. Ohio Feb. 3, 2023). Because these limits refer to different dimensions of social functioning, they are not interchangeable. *Id.* (finding that "[an] ALJ's limitation of 'occasional' interaction does not accommodate a limitation that each interaction be 'brief or short in duration because the term 'occasional' is a well-recognized, work-related limitation pertaining to the frequency of social interactions."); *Elaine K.*, 2024 WL 4023217, at *4 (same); *Kalen P. v. Comm'r of Soc. Sec.*, No. 3:24-CV-284, 2025 WL 1096454, at *4 (S.D. Ohio Apr. 14, 2025) (same).

Defendant contends, however, that the ALJ's discussion of Plaintiff's social anxiety elsewhere in the determination adequately explains why the ALJ substituted an occasional limit for a brief limit. (Def.'s Mem. in Opp'n 6–7, ECF No. 10.) And to be sure, an ALJ is not required to adopt a medical opinion verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Instead, as here, where an ALJ finds an opinion or a finding to be "persuasive" and indicates that it is consistent with the record, an ALJ must incorporate the opinion or finding or provide an explanation for declining to do so. *See Wood v. Comm'r of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019) ("the ALJ must

7

meaningfully explain why certain limitations are not included in the RFC determination, especially when, as here, such limitations are set forth in an opinion the ALJ weighs favorably"), *adopted and aff'd,* 2019 WL 1958663 (S.D. Ohio May 2, 2019); *Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission)). But the discussions to which Defendants refer explain why the ALJ did not find that Plaintiff needed more restrictive social interaction limits. (Def.'s Mem. in Opp'n 7, ECF No. 10.) They do not explain why the ALJ substituted a different limit (occasional) for the reviewers' persuasive limit (brief). In short, even when read as a whole, it is unclear from the determination if the ALJ rejected the reviewers' brief interaction limit for legitimate record-based reasons, overlooked it, or if the ALJ simply failed to appreciate the distinction between brief and occasional interactions.

In addition, Defendant contends that even if the ALJ's occasional interaction limit did not account for the reviewers' brief interaction limit, the ALJ's superficial interaction in Plaintiff's RFC adequately addressed the reviewers' brief interaction limit. Defendant reasons that this is because superficial interactions are inherently brief. (Def.'s Mem. in Opp'n 6, ECF No. 10 (citing *Metz v. Kijakazi*, No. 1:20-cv-2202, 2022 WL 4465699, at *9–10 (N.D. Ohio Sept. 26, 2022)) ("Although the Court acknowledges that a 'brief' interaction sounds as if it is more akin to a time-based limitation while 'superficial' has more of a qualitative connotation, superficial interactions, by their very nature, are *brief*, fleeting, and cursory.")).

A limit to superficial interactions refers to the quality of interactions. *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes

8

to the quality of the interactions.") (quoting *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)), *adopted and aff'd*, 2019 133177, (S.D. Ohio Jan. 8, 2019)). But the Court is not persuaded that superficial interactions are inherently brief. Many jobs may require lengthy discussions that are polite but shallow in substance—for example, bartending, waiting tables, working at the front desk of a hotel, or answering phones at a call center. Indeed, as anyone who has ever been paid to make small talk knows, some of the most superficial conversations seemingly last forever.

Moreover, the reviewers opined that Plaintiff was limited to brief, superficial interactions with coworkers and supervisors and brief, superficial interactions with the public. (R. at 81, 89.) Although there is no strict "rule against redundancy" in the Social Security context, the most sensible reading of this finding is that the reviewers, who are agency experts, intended to describe limits to two different dimensions of communication (*i.e.*, length and quality) as opposed to describing the same limit twice. Stated differently, if superficial and brief are coterminous, the reviewers would not have elected to list them both.

## V. CONCLUSION

For all the foregoing reasons, the Court **OVERRULES** the Commissioner's non-disability determination and **REMANDS** this matter pursuant to Sentence 4 § 405(g).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

9